JERRY E. SMITH, Circuit Judge:
The Center for Individual Freedom (the “Center”) challenges, on First Amendment grounds, the dismissal of its complaint questioning the constitutionality of certain provisions of Louisiana’s Campaign Finance Disclosure Act (“CFDA”). Reading the statute narrowly to avoid constitutional problems, we affirm.
I.
The Center is a nonpartisan, nonprofit § 501(c)(4) corporation whose stated goal is “to protect and defend individual freedoms and individual rights guaranteed by the U.S. Constitution.” Complaint ¶ 3. To further this goal, in advance of the September 18, 2004, primary to fill a vacancy on the Louisiana Supreme Court, the Center desired “to speak to the [Louisiana] public ... on matters of vital public interest, including ... criminal law enforcement and sentencing, legal reform, and judicial decision-making.” Complaint ¶10.
To that end, the Center wanted to finance and run television and radio advertisements that, while not advocating the election or defeat of any candidate, would refer to the positions of the candidates on issues of importance to the Center. Fearing, however, that its advertisements would be deemed as intended to influence an election and that it therefore would be forced to make certain disclosures under the CFDA, the Center opted to refrain from running any ads until the constitutionality of the relevant provisions of the statute could be determined.
On August 24, 2004, the Center sued the District Attorney for the 1st Judicial District of Louisiana and various members of the Supervisory Committee for Campaign Finance of the Louisiana Board of Ethics under the Civil Rights Act, 42 U.S.C. § 1983, and the Declaratory Judgment Act, 28 U.S.C. § 2201. The defendants (collectively, “the Board”) are responsible for implementing and enforcing the CFDA. The Center asserts that certain provisions of the CFDA violate the First Amendment and are therefore invalid. The Center alleges that at the time it filed its complaint, “planning and development *659 of the contemplated ads [was] well-advanced.” Complaint ¶ 10.[1]
The Center sought temporary, preliminary and permanent injunctive relief from enforcement of the CFDA. After a hearing on the motion for preliminary injunction, the district court held that the Center has standing to mount a facial attack but denied preliminary injunctive relief on the ground that the Center has little likelihood of success on the merits because the relevant provisions of the CFDA were equivalent to the provisions of the federal campaign finance statute that had withstood First Amendment challenge in Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).
The Center then sought emergency in-junctive relief from this court pending appeal. After we had denied that request, the parties agreed that the district court could render a final judgment on the merits of the complaint on the basis of the record and the submissions made in conjunction with the preliminary injunction motion. For the reasons articulated in its ruling on the preliminary injunction motion, the court dismissed the complaint.'
II.
The Board argues that this case is nonjusticiable because the Center lacks standing and because the completion of the relevant election renders the complaint moot. We review all questions of subject matter jurisdiction, including the justiciability issues of standing, ripeness, and mootness, de novo.[2]
A.
To have standing, a plaintiff must demonstrate that he has been injured, that the defendant caused the injury, and that the requested relief will redress the injury. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The Board argues that the Center lacks standing to contest the constitutionality of the CFDA because the Board never took or threatened to take action against the Center under the statute. Pointing to the highly generalized manner in which the complaint describes the proposed ads, the Board asserts that the Center’s belief that it would be held to the disclosure requirements of the CFDA is entirely subjective and insufficient to support standing. The Board contends that without any enforcement action taken against it by the Board, the Center cannot challenge the application of the CFDA.
In Adams v. Askew, 511 F.2d 700, 704 (5th Cir.1975), we noted that “[the plaintiffs] ... confuse an attack on the constitutionality of a statute on its face with an attack on the statute as applied.” The contention that a party cannot challenge a statute as-applied unless the statute has been applied to him is generally correct.[3] Because, however, our task is to decide whether the Center has standing to launch a facial, rather than as-applied, challenge, that tautology is not helpful.
The district court held that the Center has standing to challenge the constitutionality of the relevant provisions of the CFDA on their face. Both its conclusion and its reasoning are sound. It is *660 true that facial challenges are generally disfavored because they “entail a departure from the norms of federal-court adjudication by calling for relaxation of familiar standing requirements to allow a determination that the law would be unconstitutionally applied to different parties and different circumstances from those at hand.” Sabri v. United States, 541 U.S. 600, 609, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004). The Sabri Court acknowledged, however, that there are concerns in the First Amendment context that are “weighty enough to overcome our well-founded reticence” regarding facial challenges. Id. at 610, 124 S.Ct. 1941.
As the district court noted, “[t]he First Amendment challenge has unique standing issues because of the chilling effect, self-censorship, and in fact the very special nature of political speech itself.” Trial Transcript at 84. This assessment is based largely on Dombrowski v. Pfister, 380 U.S. 479, 486-87, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), in which the Court observed that
[a] criminal prosecution under a statute regulating expression usually involves imponderables and contingencies that themselves may inhibit the full exercise of First Amendment freedoms .... Because of the sensitive nature of constitutionally protected expression, we have not required that all of those subject to overbroad regulations risk prosecution to test their rights .... We have fashioned this exception to the usual rules governing standing because of the danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute of sweeping and improper application .... By permitting determination of the invalidity of these statutes without regard to the permissibility of some regulation on the facts of particular cases, we have, in effect, avoided making vindication of freedom of expression await the outcome of protracted litigation.
The Court echoed this conclusion in Virginia v. Am. Booksellers Ass’n, 484 U.S. 383, 392, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988), when it stated that “the alleged danger of [the challenged statute] is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution.”
Controlling precedent thus establishes that a chilling of speech because of the mere existence of an allegedly vague or overbroad statute can be sufficient injury to support standing. The Center states that it “is not willing to expose itself and its staff to civil and criminal penalties and its contributors to disclosure,” and thus it “has been forced to refrain from speaking .... ” Complaint ¶ 15. To satisfy standing requirements, however, this type of self-censorship must arise from a fear of prosecution that is not “imaginary or wholly speculative.” Babbitt v. United Farm Workers Nat’l Union, 442 U.S. 289, 302, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979).
The Center “intend[ed] to refer to the position of specific candidates on issues of importance to it.” Complaint ¶ 13. In a 1999 advisory letter, the Board stated that “[i]f the message is unmistakable, unambiguous, and suggestive of only one plausible meaning, and if that meaning is an expression of preference of one candidate over another candidate, then the underlying contributions and expenditures should be reported as otherwise required by applicable provisions of the CFDA.”[4] In addition, in a recent opinion imposing a $20,000 fine on the Republican State Leadership Committee, the Board held that the *661 CFDA is applicable where “any viewer of the advertisement would understand, even without explicit word[s] of express advocacy, that when taken as a whole and in its factual context, the unmistakable intent of the advertisement was to oppose or otherwise influence [a particular candidate’s] election.”[5]
Given the Board’s interpretation of the CFDA, if the Center pointed out the positions of candidates on issues of importance to it, it would run a nonspeculative risk that the Board would construe its ads as an “expression of preference of one candidate over another candidate” and therefore would prosecute a wilful failure to make the required disclosures. On that basis, the Center’s self-censorship constitutes sufficient injury to confer standing to challenge the constitutionality of the CFDA on its face.
The causation and redressability prongs of the standing inquiry are easily satisfied here. Potential enforcement of the statute caused the Center’s self-censorship, and the injury could be redressed by enjoining enforcement of the CFDA. The Center therefore has standing to mount its facial challenge.
B.
The Board contends that the Center’s claim is moot because the election that gave rise to the complaint has already occurred. Mootness is “the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness).” United States Parole Comm’n v. Geraghty, 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). Generally, any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot.
There are, however, exceptions to the operation of the mootness doctrine. For purposes of this case, the relevant exception is “the class of controversies capable of repetition, yet evading review.” First Nat’l Bank v. Bellotti, 435 U.S. 765, 774, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978). Outside the class action context, the “capable of repetition, yet evading review” exception can be invoked if two elements are met: “(1) [T]he challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.” Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975).
Controversy surrounding election laws, including campaign finance regulations, is one of the paradigmatic circumstances in which the Supreme Court has found that full litigation can never be completed before the precise controversy (a particular election) has run its course.[6] Echoing Supreme Court precedent, this court stated in Morial v. Judiciary Comm’n, 565 F.2d 295, 297 n. 3 (5th Cir.1977), that “[s]uits challenging the validity of state election laws are classic examples of cases in which the issues are ‘capable of repetition, yet evading review.’ ” The case before us therefore satisfies the first prong of that exception.
*662 With regard to the second prong of the “capable of repetition, yet evading review” inquiry, the Center has stated that it “has spoken out on public issues in Louisiana in the past and plans to do so in the future.” Complaint ¶ 3(b). Thus, the Center may again feel the need to censor itself to avoid possible application of the CFDA. The Board does not dispute the Center’s assertion regarding its past and likely future activity in Louisiana, and there is no reason to doubt that claim.
Moreover, despite the Supreme Court’s reminder that there must be a “reasonable expectation that the same complaining party would be subject to the same action again,” Weinstein, 423 U.S. at 149, 96 S.Ct. 347, the Court does not always focus on whether a particular plaintiff is likely to incur the same injury. For example, in Storer, 415 U.S. at 737 n. 8, 94 S.Ct. 1274, the Court stated that “[t]he 1972 election is long over, and no effective relief can be provided to the candidates or voters, but this case is not moot, since the issues properly presented, and their effects on independent candidacies, will persist as the California statutes are applied in future elections.”
Similarly, in Dunn v. Blumstein, 405 U.S. 330, 333 n. 2, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), the Court held that the exception to the mootness doctrine applied despite the fact that the plaintiff would no longer be subject to the challenged statute, because “[ajlthough [plaintiff] now can vote, the problem to voters posed by the Tennessee residence requirements is ‘capable of repetition, yet evading review.’ ” Thus, even if it were doubtful that the Center would again attempt to engage in election-related speech in Louisiana, precedent suggests that this case is not moot, because other individuals certainly will be affected by the continuing existence of the CFDA.
III.
We review questions of law de novo. See Kona Tech. Corp. v. S. Pac. Transp. Co., 225 F.3d 595, 601 (5th Cir.2000). Because a facial challenge to the constitutionality of a statute presents a pure question of law, we employ that standard here as we examine the merits.
In general, to mount a successful facial attack, “the challenger must establish that no set of circumstances exists under which the Act would be valid.” United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). The requirement is different in the First Amendment context, where we recognize the overbreadth doctrine. With regard to facial First Amendment challenges, the challenger need only show that a statute or regulation “might operate unconstitutionally under some conceivable set of circumstances.” Id.
The provisions of the CFDA relevant to the Center’s claim are as follows: Louisiana Revised Statute section 18:1501.1(A) states that
[a]ny person, other than a candidate or a political committee, who makes any expenditure or who accepts a contribution, other than to or from a candidate or to or from a political committee, shall file reports if either said expenditures or said contributions exceed five hundred dollars in the aggregate during the aggregating period defined for committees.
The reports must “contain the same information ... as reports required of political committees,” which includes “the full name and address of each person who has made one or more contributions to and which have been received and accepted by the [individual or group] during the reporting period.” La.Rev.Stat. § 18:1491.7(B)(4)(a).
*663 If an individual or organization is required to file a report and fails to do so, the CFDA authorizes civil penalties. See id. § 18:1505.4. If the failure to file is knowing, wilful, or fraudulent, the person required to file (either as an individual or representative of an organization) may be fined up to $500 dollars and sentenced to up to six months in prison. See id. § 18:1505.6(A)(2).
At the heart of the Center’s challenge is the statutory definition of “expenditure.” Section 18:1483(9)(a) states that an expenditure is “a purchase, payment, advance, deposit, or gift, of money or anything of value made for the purpose of supporting, opposing, or otherwise influencing the nomination or election of a person to public office.” The Center contends that this definition is vague and overbroad because it could be interpreted to reach both express advocacy and issue advocacy. Because disclosure requirements burden protected political speech and subject those who do not comply to civil and criminal penalties, and because the disclosure requirements are triggered, inter alia, by “expenditures” in excess of $500, the Center contends that the definition is vague and overbroad and therefore violates the First Amendment.
The Board counters that because the relevant provisions of the CFDA are equivalent to the disclosure provisions in the Federal Election Campaign Act (“FECA”) that were upheld in Buckley, the CFDA provisions are not facially unconstitutional. We agree, but only by imposing the same limiting construction on the CFDA that the Court employed in Buckley.
A.
The challenged provisions are similar to what the Court confronted and upheld in Buckley. Section 434(e) of FECA required that
[e]very person (other than a political committee or candidate) who makes contributions or expenditures, other than by contribution to a political committee or candidate, in an aggregate amount in excess of $100 within a calendar year ... file with the [Federal Election] Commission a statement containing the information required by this section.
Buckley, 424 U.S. at 160, 96 S.Ct. 612. In relevant part, FECA defined “expenditure” as “a purchase, payment, distribution, loan, advance, deposit, or gift of money or anything of value, made for the purpose of influencing the nomination for election, or the election, of any person to Federal office, or to the office of presidential and vice presidential election.” Id. at 147, 96 S.Ct. 612.
The challengers in Buckley “attacked] § 434(e) as a direct intrusion on privacy of belief ... and as imposing very real, practical burdens ... certain to deter individuals from making expenditures for their independent political speech .... ” Id. at 75, 96 S.Ct. 612. In discussing a similar requirement within the FECA, the Court agreed that disclosure requirements “can seriously infringe on privacy of association and belief guaranteed by the First Amendment” and that such requirements must therefore “survive exacting scrutiny.” Id. at 64, 96 S.Ct. 612.
The Court held, however, that in general, disclosure requirements survive exacting scrutiny because “there are governmental interests sufficiently important to outweigh the possibility of infringement [of First Amendment rights], particularly when the free functioning of our national institutions is involved .... The governmental interests sought to be vindicated by the disclosure requirements are of this magnitude.” Id. at 66, 96 S.Ct. 612. In *664 reaching that conclusion, the Court focused on voters’ need for information about candidates and their supporters to evaluate the candidates and expose corruption. Id. at 66-68, 96 S.Ct. 612.
Nevertheless, with regard to § 434(e), the Court stated that “the provision raises serious problems of vagueness, particularly treacherous where, as here, the violation of its terms carries criminal penalties and fear of incurring these sanctions may deter those who seek to exercise protected First Amendment rights.” Id. at 76-77, 96 S.Ct. 612. The source of vagueness was the “for the purpose of influencing” language within the definition of expenditure, which gave the provision “potential for encompassing both issue discussion and advocacy of a political result.” Id. at 76, 79, 96 S.Ct. 612. Due process “requires that a criminal statute provide adequate notice to a person of ordinary intelligence that his contemplated conduct is illegal.” Id. at 77, 96 S.Ct. 612. Without knowing whether the reporting requirements of § 434(e) were triggered by political advocacy, issue discussion, or both, an individual (or organization) wishing to speak out could not know whether his contemplated conduct would subject him to criminal sanction if he did not disclose the information required by FECA.
In addition, the Court held that § 434(e) was rendered potentially overbroad by the fact that it could be interpreted to require disclosure when an independent individual or group engages only in issue advocacy. The Court reasoned that if § 434(e) did cover that situation, the connection between the information sought and the governmental interest in promoting clean and well-informed elections “may be too remote.” Id. at 80, 96 S.Ct. 612.
Rather than striking § 434(e) down as unconstitutional, however, the Court imposed a limiting construction on the statute, bringing it within constitutional bounds by drawing a line between express advocacy and issue advocacy. The Court stated that “we construe ‘expenditure’ for purposes of [§ 434(e)] ... to reach only funds used for communications that expressly advocate the election or defeat of a clearly identified candidate.” Id. Words of express advocacy include terms “such as ‘vote for,’ ‘elect,’ ‘support,’ ‘cast your ballot for,’ ‘Smith for Congress,’ ‘vote against,’ ‘defeat,’ ‘reject.’ ” Id. at 44 n. 52, 96 S.Ct. 612. These are the well-known “magic words.”
Given that the CFDA links the disclosure requirements for expenditures made by independent individuals and groups to the same “for the purpose of influencing” language that the Court confronted and upheld in Buckley, we can likewise construe the CFDA in a way that saves it from constitutional infirmity. On that basis, the Center fails in its facial challenge to the constitutionality of the disclosure provisions of the CFDA.
B.
The more difficult question, in light of McConnell v. Fed. Election Comm’n, 540 U.S. 93, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003), is whether we must, in circumstances such as this, continue to adhere to the express advocacy/issue advocacy dichotomy that the Court set up in Buckley and that we employed in Chamber of Commerce of the United States v. Moore, 288 F.3d 187, 194-95 (5th Cir.2002). In McConnell the Court held that for purposes of i’egulating election-related speech, there is no constitutionally-mandated line that must be drawn between express advocacy and issue advocacy. “Speakers,” the Court stated, do not “possess an inviolable First Amendment right to engage in the latter category of speech.” McConnell, *665 540 U.S. at 190, 124 S.Ct. 619. The Court further asserted that
a plain reading of Buckley makes clear that the express advocacy limitation, in both the expenditure and the disclosure contexts, was the product of statutory interpretation rather than a constitutional command. In narrowly reading the FECA provisions in Buckley to avoid problems of vagueness and overbreadth, we nowhere suggested that a statute that was neither vague nor overbroad would be required to toe the same express advocacy line.
Id. at 192, 124 S.Ct. 619.
The Board contends that McConnell eliminates completely the express advocacy/issue advocacy delineation and in its place provides a more holistic, “practical” approach to determining whether expenditures have been made for the purpose of influencing an election and therefore, consistent with the First Amendment, can be subject to regulation. That reading of McConnell is incorrect. McConnell states only that a campaign finance regulation can cover issue advocacy and nevertheless be constitutional so long as the regulation is “closely drawn” to match a “sufficiently important” government interest, id. at 135, 124 S.Ct. 619, and is not vague. The Court has not provided a broader approach to determining when expenditures have been made for the purpose of influencing an election.
Instead, the Court has stated that legislatures may employ standards other than a bright-line distinction between express and issue advocacy as long as they are precise in regard to the types of activities that will subject an individual or group to regulation. With regard to the particular provision at issue in McConnell, for example, the Court held that new FECA § 304(f)(3)’s definition of “electioneering communication” “raises none of the vagueness concerns that drove our analysis in Buckley,” because the term
applies only (1) to a broadcast (2) clearly identifying a candidate for federal office, (3) aired within a specific time period, and (4) targeted to an identified audience of at least 50,000 viewers or listeners. These components are both easily understood and objectively determinable. Thus, the constitutional objection that persuaded the Court in Buckley to limit FECA’s reach to express advocacy is simply inapposite here.
Id. at 194, 124 S.Ct. 619.
McConnell does not obviate the applicability of Buckley’s line-drawing exercise where, as in this case, we are confronted with a vague statute. See Anderson v. Spear, 356 F.3d 651, 664-65 (6th Cir.2004). The flaw in the CFDA is that it might be read to cover issue advocacy. Following McConnell, that uncertainty presents a problem not because regulating such communications is per se unconstitutional, but because it renders the scope of the statute uncertain.
To cure that vagueness, and receiving no instruction from McConnell to do otherwise, we apply Buckley’s limiting principle to the CFDA and conclude that the statute reaches only communications that expressly advocate the election or defeat of a clearly identified candidate. In limiting the scope of the CFDA to express advocacy, we adopt Buckley’s definition for what qualifies as such advocacy.[7] As so limited, *666 the challenged provisions of the CFDA are facially constitutional.
The judgment of dismissal is AFFIRMED.

.Because the Center did not run the ads and make the choice between complying with the CFDA and waiting for the Act to be enforced against it, the Center is asserting a facial, rather than as-applied, challenge to the constitutionality of the statute.

. See Bissonnet Invs., LLC v. Quinlan, 320 F.3d 520, 522 (5th Cir.2003); Sample v. Morrison, 406 F.3d 310, 312 (5th Cir.2005).

. Exceptions include circumstances where third-party standing is appropriate.

. La. Bd. of Ethics, Campaign Finance Advisory Op. No. 1999-580 (Sept. 17, 1999).

. La. Bd. of Ethics, Campaign Finance Ruling No. 2003-746 (Jan. 13, 2005) (emphasis added).

. See Moore v. Ogilvie, 394 U.S. 814, 816, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969); Storer v. Brown, 415 U.S. 724, 737 n. 8, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974); First Nat’l Bank, 435 U.S. at 774, 98 S.Ct. 1407; Norman v. Reed, 502 U.S. 279, 288, 112 S.Ct. 698, 116 L.Ed.2d 711 (1992).

. We are aware of the McConnell Court’s assertions, 540 U.S. at 193-94, 124 S.Ct. 619, that "the presence or absence of magic words cannot meaningfully distinguish electioneering speech from a true issue ad,” that "Buckley's magic-words requirement is functionally meaningless,” and that "Buckley's express advocacy line ... has not aided the legislative effort to combat real or apparent corruption.” Those statements, however, were *666 made in the context of the Court’s determination that a distinction between express advocacy and issue advocacy is not constitutionally mandated. The Court said nothing about the continuing relevance of the magic words requirement as a tool of statutory construction where a court is dealing with a vague campaign finance regulation.
In light of that silence, we must assume that Buckley remains good law in such circumstances. If the State of Louisiana agrees with the Court that the magic words requirement is "functionally meaningless," then pursuant to McConnell it is free to amend the CFDA in the same way that Congress altered the FECA.