**UNITED STATES of America,**

**v.**

**Francisco TORRES.**

**No. 3:08-CR-1697-KC.**

United States District Court,
W.D. Texas,
El Paso Division.

Aug. 21, 2008.

Erik Anthony Hanshew, Federal Public Defender, El Paso, TX, for Francisco Torres.

J. Brandy Gardes, Assistant U.S. Attorney, El Paso, TX, for United States of America.

## ORDER

KATHLEEN CARDONE, District Judge.

On this day, the Court considered Defendant Francisco Torres's Motion to Dis-

miss Indictment ("Defendant's Motion") and Government's Response to Defendant's Motion to Dismiss Indictment ("Government's Response"). For the reasons set forth herein, Defendant's Motion is **DENIED.**

## I. BACKGROUND

### A. Procedural History

On May 7, 2008, the Government filed a Criminal Complaint against Defendant Francisco Torres, alleging that he violated Title 18, United States Code, § 2250—Failure to Register or Update a Registration by a Sexual Offender. Section 2250 is the enforcement provision of the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. §§ 16901 *et seq.* Later on May 7, 2008, the Government arrested Defendant pursuant to a warrant and without incident. On May 13, 2008, a Preliminary Hearing was held after which the Court found probable cause for Defendant's arrest.

On June 11, 2008, a Grand Jury sitting in El Paso, Texas, returned a single-count Indictment, charging Defendant with a violation of § 2250. Specifically, the Indictment states:

> **COUNT ONE**
>
> **(18 U.S.C. § 2250—Failure to Register (Sex Offender))**
>
> Beginning on or about July 27, 2006 and continuing until on or about May 7, 2008, in the Western District of Texas and elsewhere, defendant
>
> **FRANCISCO TORRES,**
>
> being a person who is a sex offender as defined for the purpose of the Sex Offender Registration and Notification Act by reason of a conviction under the United States Code of Military Justice for: Article 120—Sodomy of a Child (one count) and Article 134—Indecency with a Child Under 16 (one count) on or about June 3, 1999, and who is required to register under the Sex Offender Registration and Notification Act, did knowingly fail to register and update a registration as required by the Sex Offender Registration and Notification Act, in violation of Title 18, United States Code, section 2250(a)(2) and (3).

Indictment 1–2.

### B. Factual Background

The Government alleges that it can prove the following facts:

> On or about June 3, 1999, Defendant was convicted of one (1) count of sodomy of a child in violation of Article 120 of the Uniform Code of Military Justice and was sentenced to twelve (12) years confinement, a dishonorable discharge from the Air Force, forfeiture of all pay and allowances, and reduction to E–1. On or about this same date, Defendant also was convicted of one (1) count of committing indecent acts upon a child in violation of Article 134 of the United States Code of Military Justice, and sentenced to nine (9) years confinement, a dishonorable discharge, forfeiture of all pay and allowances, and reduction to E–1. The charges involved the repeated molestation (including fondling and simulated oral and vaginal sexual acts) over a 2–year period of a female family member under the age of 12.
>
> On or about December 25, 2004, Defendant was released from the custody of the Federal Bureau of Prisons at FCI La Tuna, Anthony, Texas/New Mexico.
>
> On December 30, 2004, Defendant completed his initial sex offender registration with the El Paso Police Department. During this initial registration, Defendant signed a CR–32 Pre–Release Notification Form Texas Sex Offender Registration Program, acknowledging he had a lifetime registration require-

ment and that he must update his registration every ninety (90) days.

On June 27, 2007, after the passage of both SORNA and the Attorney General's Interim Rule, Defendant signed a second CR-32 Pre-Release Notification Form, Texas Sex Offender Registration Program. On this form, Defendant acknowledged not only his lifetime registration requirement, but also indicated that he understood, inter alia, that "[n]ot later than the 7th day after the date of the change, I shall report to my primary registration authority any change in the following: my name (includes a request for name change and denial of a request), my physical health (includes hospitalization), job status (includes beginning and leaving employment and changing work locations)."

On various dates between March 31, 2005, and March 20, 2008, Defendant filed his quarterly registration update forms with the El Paso Police Department. During these registration reports, Defendant reported several changes in his employment status:

(a) On December 29, 2005, Torres reported a change in his employment from unemployed to self-employed in construction.

(b) On November 8, 2007, Torres reported a change to his employment status from self-employed as a construction worker to a welder with American Eagle Brick.

However, the American Eagle Brick is located in New Mexico. Despite this, Defendant did not register with the New Mexico authorities as required.

Additionally, according to Defendant's application for employment with American Eagle Brick, he was employed at Wal-Mart in El Paso, Texas, between April 2005 and July 2007, a time in which Defendant reported first, that he was unemployed, and then self-employed. Texas Workforce records confirm Defendant was employed from at least the second quarter of 2006 through the third quarter of 2007. Never during his various updates with the El Paso Police Department did Defendant report this employment.

On January 30, 2008, Defendant began employment with Webco General Partnership at the commissary located on Fort Bliss, Texas. Nevertheless, during a ninety day update on March 20, 2008, Defendant failed to notify the El Paso Police Department of this employment or any employment on Ft. Bliss.

Upon arrest, and after being advised of his Miranda rights and waiving the same, Defendant admitted he knew of his registration requirements and knowingly failed to register all the information as required.

Gov't's Resp. 4–7. *See also* Gov't's Criminal Compl. ("Complaint") 2–3.

### C. The Instant Motion

On July 7, 2008, Defendant filed the instant Motion, arguing that his Indictment violated the Constitution, the Administrative Procedure Act, and was insufficiently pleaded. *See generally* Def.'s Mot. On July 18, 2008, the Government filed its Response, arguing that each of Defendant's objections is without merit, that SORNA is Constitutionally sound, and Defendant's Indictment is sufficiently pleaded. *See generally* Gov't's Resp.

## II. DISCUSSION

### A. Standard

Federal Rule of Criminal Procedure 12(b)(2) states that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R.Crim.P. 12(b)(2); *United States v. Lankford,* 196 F.3d 563, 569 (5th Cir.1999). A

party must raise before trial "a motion [that] alleged a defect in the indictment or information—but at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense[.]" FED.R.CRIM.P. 12(b)(3).

When challenging the constitutionality of a statute, a defendant may challenge the statute either on its face, or as the statute is applied to a defendant's particular circumstances. *See United States v. Luna,* 165 F.3d 316, 319–22 (5th Cir.1999) (analyzing the constitutionality of 18 U.S.C. § 922 both facially and as applied); *United States v. Robinson,* 119 F.3d 1205, 1213–15 (5th Cir.1997) (holding the Hobbs Act to be constitutional both facially and as applied to the defendant). In the instant case, while Defendant never specifies whether he challenges SORNA facially or as applied, Defendant appears to generally pursue a facial challenge of SORNA's constitutionality because he does not apply the alleged facts of the instant case to his constitutional analyses of the statute for most of his arguments. *See generally* Def.'s Mot. Nevertheless, inasmuch as Defendant's Motion argues for the Court to review the constitutionality of SORNA "as applied," the Court will do so.

Outside of the First Amendment context, a plaintiff may only succeed in a facial challenge to the constitutionality of a statute by "establishing that no set of circumstances exists under which the Act would be valid."[1] *Washington State Grange v. Washington State Republican Party,* — U.S. —, — & n. 6, 128 S.Ct. 1184, 1190 & n. 6, 170 L.Ed.2d 151 (2008) (citing *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d

1. *See also United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish *that no set of circumstances exists* under which the Act would be valid.") (emphasis added). This Court notes, however, that there is an ongoing disagreement among the justices of the United States Supreme Court regarding the validity of the *Salerno* standard to determine the facial validity of a legislative act. *See Washington State Grange v. Washington State Republican Party,* — U.S. —, — & n. 6, 128 S.Ct. 1184, 1190 & n. 6, 170 L.Ed.2d 151 (2008) (citing *Washington v. Glucksberg,* 521 U.S. 702, 739–40 n. 7, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997)). In fact, several of the justices have called into question the validity of this portion of the *Salerno* opinion. *Glucksberg,* 521 U.S. at 739–740 n. 7, 117 S.Ct. 2258 (Stevens, J., concurring in judgments) (citing *inter alia* Michael C. Dorf, *Facial Challenges to State and Federal Statutes,* 46 STAN. L.REV. 235, 239–240 (1994)). The uncertainty surrounding the authority of the *Salerno* holding is significant. *Chicago v. Morales,* 527 U.S. 41, 55 n. 22, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (plurality opinion) (Stevens, J., Souter, J., and Ginsburg, J.) ("To the extent we have consistently articulated a clear standard for facial challenges, it is not the *Salerno* formulation, which has never been the decisive factor in any decision of this Court....").

Most recently, in *Washington State Grange,* Justice Thomas, writing for the majority, recognized this criticism of *Salerno*. *Washington State Grange,* 128 S.Ct. at 1190 n. 6. The Court in *Washington State Grange* applied both the *Salerno* standard as well as the more deferential "plainly legitimate sweep" standard and held that the statute in question survived the facial challenge under either standard. *Id.* at 1190. Nevertheless, though the there may be uncertainty surrounding the authority of the *Salerno* holding as the proper analysis for considering facial challenges to the constitutionality of a statute, the Fifth Circuit has clearly stated that the "no set of circumstances" standard applies to facial challenges outside of the First Amendment context. *Center for Individual Freedom v. Carmouche,* 449 F.3d 655, 662 (5th Cir.2006) (citing *Salerno,* 481 U.S. at 745, 107 S.Ct. 2095). Because this Court must follow Fifth Circuit precedent, the Court will apply the *Salerno* no-set-of-circumstances standard to the instant case.

697 (1987)); *Center for Individual Freedom v. Carmouche,* 449 F.3d 655, 662 (5th Cir.2006).

### B. SORNA

On July 27, 2006, Congress enacted the Adam Walsh Child Protection and Safety Act of 2006 ("Walsh Act"), Pub.L. No. 109–248, 120 Stat. 587 (2006). The Act's stated goal is "to protect the public from sex offenders and offenders against children" and to "establish a comprehensive national system for the registration of those offenders." 42 U.S.C. § 16901. Title I of the Act—entitled the Sex Offender Registration and Notification Act ("SORNA")—creates a national sex offender registry law and mandates the procedure for sex offenders to register under the law. *See* 42 U.S.C. §§ 16901 *et seq.*

#### 1. History

SORNA was preceded by the Jacob Wetterling Act ("Wetterling Act") in 1994, which is codified at 42 U.S.C. § 14071. That act provided federal funding to states which enacted sex offender registration laws, commonly known as "Megan's Laws." 42 U.S.C. § 14071. While the Act primarily was regulatory in nature, similar to SORNA, the Wetterling Act also provided criminal penalties of up to one year for a first offense, and up to ten years for subsequent offenses, for sex offenders who failed to register in any state they resided, worked or were a student. *See* 42 U.S.C. § 14072(i).

By 1996, the District of Columbia and each of the states enacted a Megan's Law.[2] Texas initially enacted its program in 1991. *See* Act of June 15, 1991, 72nd Leg., R.S., ch.572, Tex. Gen. Laws 2029–32 (now codified, *as amended,* at Tex.Code Crim. P. Ann. art. 62.001, *et seq.*); *Rodriguez v. State,* 93 S.W.3d 60, 66 (Tex.Crim.App. 2002). Under the Texas Sexual Offender Registration Program (TSORP), persons with a reportable conviction or adjudication for certain sex-related offenses, such as Defendant's, must register with the local law enforcement authority where they reside or intend to reside for more than seven days. Tex.Code Crim. P. Ann. art. 62.051 (Vernon 2006). The Texas registry system also provides a sex offender must register any changes in employment within seven days, including gaining, losing or changing employment locations. *Id.*

SORNA accomplishes its purpose of establishing a comprehensive national system for the registration of sex offenders by creating a new set of standards for the states' Megan's Laws and imposing registration obligations on sex offenders. *See* 42 U.S.C. § 16901. The SORNA reforms were designed to "close potential gaps and loopholes under the old law, and generally strengthen the nationwide network of sex offender registration and notification programs." Department of Justice's National Guidelines for Sex Offender Registration and Notification, 72 Fed.Reg. 30210, 30211 (May 30, 2007).

#### 2. The Registry

SORNA is essentially divided into two parts: (1) the requirements for each state to maintain a registry—the state component; (2) and the requirements for how sex offenders must register—the individual component. *See United States v. Ditomasso,* 552 F.Supp.2d 233, 236 (D.R.I. 2008). As part of its state registry component, SORNA defines the term "sex offender" and addresses the various tiers of sex offender status. 42 U.S.C. § 16911; 30 A.L.R. Fed.2d 213. SORNA then requires that each jurisdiction maintain a jurisdiction-wide sex offender registry conforming to the law's requirements. 42 U.S.C. § 16912(a). A sex offender is re-

2. For a complete list of all state Megan's Laws, see http://www.meganslaw.org/.

quired to provide for inclusion in the registry the sex offender's name and any aliases, social security number, and address; the name and address of any place where the sex offender is either an employee or a student; and the license plate number and a description of any vehicle owned or operated by the sex offender. 42 U.S.C. § 16914(a)(1)-(7). In addition, the jurisdiction in which the sex offender registers must also include in the registry, at a minimum, a physical description of the sex offender; the text of the provision of law defining the criminal offense for which the sex offender is registered; the sex offender's complete criminal history; a current photograph of the sex offender; fingerprints and palm prints; a DNA sample; and a photocopy of a valid driver's license or identification card issued to the sex offender by a jurisdiction. 42 U.S.C. § 16914(b)(1)-(8).

Each jurisdiction is also required to maintain a web site that makes "readily accessible to all jurisdictions and to the public, all information about each sex offender in the registry." 42 U.S.C. § 16918(a). The web site must be maintained in such a way as "will permit the public to obtain relevant information for each sex offender by a single query for any given zip code or geographic radius set by the user." *Id.* The website must also include links to sex offender and education resources; instructions on how to correct errors or dispute information; and a warning not to use the information on the web site to harass sex offenders whose information is made public by the web site. *Id.* § 16918(c)-(e). Information not required to be included on the web site include the identity of any victims of a sex offense; the sex offender's Social Security number; and any reference to arrests that did not result in a conviction. *Id.* § 16918(b).

**3. Individual sex offender registration requirements.**

In addition to setting up a national sex offender registry law, SORNA mandates the procedure for a sex offender registering under the Act. This individual component is found in § 16913, which states:

(a) In general

A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

(b) Initial registration

The sex offender shall initially register—

(1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or

(2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

(c) Keeping the registration current

A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

(d) Initial registration of sex offenders unable to comply with subsection (b) of this section

The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

(e) State penalty for failure to comply

Each jurisdiction, other than a Federally recognized Indian tribe, shall provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this subchapter.

42 U.S.C. § 16913.

In addition to delineating the procedure for registering, SORNA requires the sex offender to appear in person and allow the jurisdiction to take a current photograph and verify the information in each registry on a periodic basis, the frequency depending on the sex offender's tiered offense status. 42 U.S.C. § 16916. SORNA also requires different periods for which the sex offender must maintain full registration in the registry, the length for which again depending on the sex offender's tiered offense status. *Id.* § 16915(a). The full registration period may be reduced if the sex offender can show a "clean record"—i.e. no further convictions of felonies or sex crimes, and successful completion of parole, probation, supervised release and sex offender treatment. *Id.* § 16915(b).

Shortly before a sex offender's release from custody, or immediately after the sex offender's sentencing if not in custody, an official from the jurisdiction is required to inform the sex offender of his duties under SORNA; require the sex offender to read and sign a form explaining the sex offender's duty to register; and ensure the sex offender is registered. *Id.* § 16917(a). If a sex offender cannot be registered in accordance with these requirements, the Attorney General shall prescribe rules for notification. *Id.* § 16917(b).

### 4. SORNA's enforcement provisions

Sex offenders under particular circumstances who fail to comply with SORNA are subject to SORNA's enforcement provision. *See* 18 U.S.C. § 2250. This provision states:

(a) In general.—Whoever—

(1) is required to register under the Sex Offender Registration and Notification Act;

(2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or

(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250.

On February 28, 2007, pursuant to its statutory directive to specify the applicability of SORNA to sex offenders convicted before the enactment of SORNA, and who were unable to comply with the initial registration requirements of 42 U.S.C. § 16913(b), the Attorney General promulgated an Interim Rule declaring SORNA retroactive to all covered sex offenders

("Interim Rule"). Department of Justice, Interim Rule with Request for Comments, 72 Fed.Reg. 8894, 8897 (Feb. 28, 2007) (codified at 28 C.F.R. § 72 (2007)). The comment period on the Interim Rule ended April 30, 2007, resulting in the Final Interim Rule being implemented.

### C. Discussion

In his Motion, Defendant moves the Court to dismiss his Indictment because he argues that SORNA violates the Constitution and conflicts with other federal laws. Def.'s Mot. 3. Specifically, Defendant argues (1) SORNA violates the Commerce Clause of the Constitution by punishing purely local intrastate activity that does not substantially affect interstate commerce; (2) SORNA violates his procedural and substantive due process rights; (3) SORNA violates the Ex Post Facto Clause of the Constitution; (4) Congress impermissibly delegated to the Attorney General the decision whether SORNA would apply retroactively, in violation of the non-delegation doctrine; (5) the Attorney General's regulation retroactively applying SORNA violates the Administrative Procedure Act; (6) SORNA violates the Tenth Amendment by impermissibly encroaching upon state power; and (7) the Indictment fails to inform Defendant of what he did to make him guilty of the charge against him. *Id.* at 4–29. The Court will review each of Defendant's arguments *seriatim.*

#### 1. SORNA does not violate the Commerce Clause

Defendant first argues that SORNA's jurisdictional provision—18 U.S.C. § 2250(a)(2)(A)—violates the Commerce Clause of the Constitution because it punishes purely local intrastate activity that does not substantially affect interstate commerce. Def.'s Mot. 6. Defendant is in error.

#### a. SORNA's enforcement provision—18 U.S.C. § 2250

For Defendant to be convicted of violating § 2250, the government must prove three elements at trial: (1) Defendant was required to register under SORNA—specifically 42 U.S.C. § 16913; (2)(a) Defendant is a sex offender whose prior conviction involved a violation of federal law (including the U.C.M.J.), or (2)(b) Defendant traveled in interstate, foreign commerce or Indian country; and (3) Defendant knowingly failed to register or update his sex offender status as required by § 16913. See 18 U.S.C. § 2250. "Section 16913, in turn, imposes registration requirements upon each and every 'sex offender' in the United States." *United States v. Thomas,* 534 F.Supp.2d 912, 915 (N.D.Iowa 2008) (citing § 16913).

The Government alleges that Defendant's prior crimes occurred while Defendant was serving in the United States Air Force on a military base. Gov't's Resp. 12; Compl. 2. Moreover, Defendant's prior conviction was for a violation of Articles 120 and 124 of the U.C.M.J. Indictment 1–2. The Constitution provides for the federal government's "exclusive jurisdiction" over "all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings." U.S. Const., art. I, § 8, cl. 17. Moreover, "the Laws of the United States which shall be made in Pursuance" to the Constitution "shall be the supreme Law of the Land." *Id.* art. VI, cl. 2. Accordingly, Congress's power to regulate Defendant's actions stems not from its Commerce Clause authority, but from Congress's superseding power to assign consequences for violations of federal law.[3] Accordingly,

3. The Court notes that 18 U.S.C. § 2250 does not even require a sex offender to have trav-

SORNA's enforcement provision making it a crime to fail to register or update one's registration after having been convicted of a federal sex offense on federal property does not implicate the Commerce Clause. Because Defendant does not address whether SORNA violates any other clause of the Constitution, his arguments fail.

Nevertheless, assuming *arguendo* Defendant's subsequent SORNA offense were to implicate the Commerce Clause,[4] the Court holds that SORNA's enforcement provision is a valid exercise of Congress's ability to regulate commerce between the states, as defined under the second prong of the Commerce Clause analysis in *United States v. Lopez* and its progeny. *See United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).

The Constitution grants Congress the authority to "regulate Commerce with foreign Nations, and among the several States, and with Indian Tribes." U.S. Const. art. I, § 8, cl. 3. The Constitution also grants Congress the authority to "make all laws which shall be necessary and proper for carrying into execution the foregoing power[.]" *Id.* art I., § 8, cl. 18. For much of the 20th century, "the scales of the federal courts' Commerce Clause jurisprudence tipped more towards according Congress considerably greater latitude in regulating conduct rather than to maintaining a distinction between 'what is truly national and what is truly local.'" *United States v. Bredimus,* 352 F.3d 200, 204–05 (5th Cir.2003) (quoting *United States v. Morrison,* 529 U.S. 598, 608, 617–18, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000)). However, the Supreme Court heralded essentially a "new era" of Commerce Clause jurisprudence with the decisions of *Lopez* and *Morrison,* which "clarified the legal standards applicable to a constitutional challenge under the Commerce Clause." *Id.* These cases, and their progeny have determined the "outer limits" of Congress's power to enact legislation, and provide the framework for our analysis. *Id.* (citing *Lopez,* 514 U.S. at 556–567, 115 S.Ct. 1624); *United States v. Ho,* 311 F.3d 589, 596 (5th Cir.2002).

In *Lopez,* the Supreme Court held that a statute making it a federal crime to have a gun within 1,000 of a school exceeded the "outer limits" of Congress's authority under the Commerce Clause. *Lopez,* 514 U.S. at 561, 115 S.Ct. 1624 (holding 18 U.S.C. § 922(q)(1)(A) unconstitutional). In holding the gun-control statute unconstitutional, the Court outlined three broad categories of activity that the Constitution allows Congress to regulate under its commerce power: (1) "the use of the channels of interstate commerce," (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities," and (3) "activities having a substantial relation to interstate commerce, i.e., activities that 'substantially affect' interstate commerce." *Id.* at 558–59, 115 S.Ct. 1624; *see also Bredimus,* 352 F.3d at 206. Subsequent Supreme Court cases have further elaborated on the *Lopez* framework. *See, e.g., Gonzales v. Raich,* 545 U.S. 1, 22, 125 S.Ct.

eled in interstate commerce to violate its provisions when the sex offender's prior conviction is based on federal law. *See* 18 U.S.C. § 2250(a)(2) (stating disjunctively that a sex offender must either be a violator of a federal sex offense *or* travel in interstate commerce).

4. At least one other district court found it necessary to analyze whether SORNA violates the Commerce Clause despite the defendant's underlying conviction being based on a federal statute. *See United States v. Van Buren, Jr.,* No. 3:08–CR–198, 2008 WL 3414012, at *9 (N.D.N.Y. Aug. 8, 2008). Out of an abundance of caution, and to fully address Defendant's argument on this issue, this Court will do the same.

2195, 162 L.Ed.2d 1 (2005) (applying a rational basis test to whether activities in question substantially affect interstate commerce); *Morrison,* 529 U.S. at 617, 120 S.Ct. 1740 (holding that Congress cannot regulate violent criminal conduct based solely on its aggregate effect on interstate commerce).

Defendant argues in the instant case that SORNA violates the Commerce Clause because SORNA deals neither with the channels of interstate commerce, nor does it involve the regulation of persons or things in interstate commerce. Def.'s Mot. 7.[5] Defendant is mistaken. Unless the underlying conviction is based on a federal statute, SORNA's enforcement provision only criminalizes failure to register for sex offenders who travel in interstate commerce. 18 U.S.C. § 2250(a)(2)(B). This jurisdictional statement puts SORNA under the second prong of the *Lopez* framework. *See Lopez,* 514 U.S. at 561–62, 115 S.Ct. 1624.

While the Fifth Circuit has yet to opine whether SORNA is constitutional under the Commerce Clause, the weight of the case law in district courts throughout the nation (and in one Circuit Court of Appeals) appears to support this position. *See e.g., Ditomasso,* 552 F.Supp.2d at 245–47 ("[T]he function of this statute is to regulate the movement of sex offenders in interstate commerce."); *United States v. Mason,* No. 6:07–cr–52–Orl–19GJK, 2008 WL 1882255, at *2 (M.D.Fla. April 24, 2008) ("SORNA's jurisdictional element brings the Act squarely within *Lopez's* second prong."); *Thomas,* 534 F.Supp.2d at 915 (N.D.Iowa 2008) (same); *United States v. Howell,* No. 07–2013, 2008 WL 313200, at *8 (N.D.Iowa Feb. 1, 2008) ("It is clear that Congress was aware of the limits of its power in its passage of SORNA because it specifically included the jurisdictional element of interstate travel"); *United States v. Hinen,* 487 F.Supp.2d 747, 757–58 (W.D.Va.2007) ("The jurisdictional element involved in [SORNA] both distinguishes it from the statutes at issue in *Lopez* and *Morrison* and satisfies the requirements of the Commerce Clause."); *United States v. Elliott,* No. 07–14059, 2007 WL 4365599, at *3 (S.D.Fla. Dec. 13, 2007) ("SORNA's requirement that the Defendant travel through interstate commerce prior to being subject to the registration requirements of SORNA, is a valid exercise of Congress's commerce power to regulate, 'the instrumentalities of interstate commerce, or persons or things in interstate commerce.' "); *United States v. Beasley,* No. 1:07–CR–115–TCB, 2007 WL 3489999, at *9 (N.D.Ga. Oct. 10, 2007) ("The statute derives its authority from the second prong of *Lopez*—the ability to regulate persons or things in interstate commerce."); *see also United States v. May,* 535 F.3d 912 (8th Cir.2008) (holding SORNA "derives its authority from each prong of *Lopez*—and most specifically" the first two prongs); *United States v. Adkins,* No. 1:07–CR–59, 2007 WL 4335457, at *7 (N.D.Ind. Dec. 7, 2007) (holding SORNA is valid under the first two prongs of the *Lopez* framework); *United States v. Pitts,* No. 07–157–A, 2007 WL 3353423, at *4 (W.D.La. Nov. 7, 2007) (holding SORNA is a valid exercise of congressional authority under the Commerce Clause generally).[6]

5. In addition, Defendant argues that SORNA fails to regulate activities that substantially affect interstate commerce. Def.'s Mot. 7. Because the Court holds that SORNA may be upheld under the second and not the third prong of the Lopez framework, the Court need not address this argument. *See United States v. Hinen,* 487 F.Supp.2d 747, 758 (W.D.Va.2007) ("Where a jurisdictional predicate is present in a statute, as in the case here, the 'substantially affects' test is inapplicable.") (citations omitted); *Thomas,* 534 F.Supp.2d at 920 ("The substantial-effects test is only applicable when a statute is alleged to fall within the third Lopez category, not the second Lopez category.") (citation omitted).

6. This list of cases is representative and is not exhaustive. *See Van Buren, Jr.,* 2008 WL

Defendant argues nonetheless that Congress overreaches its authority because the interstate travel addressed by SORNA is not intended to further the crime itself. *See* Def.'s Mot. 7. Defendant relies on *United States v. Powers* in claiming SORNA violates the Commerce Clause. *See* Def.'s Mot. 7 (citing *United States v. Powers,* 544 F.Supp.2d 1331, 1334 (M.D.Fla. 2008)). In reviewing *Powers,* this Court concurs with another judge of the Middle District in Florida who concluded that the court in *Powers* "gave only cursory treatment of the reasoning of this Court and a number of others that have upheld SORNA's constitutionality: that the enactment of SORNA was a valid use of Congress' power to 'protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities.'" *Mason,* 2008 WL 1882255, at *2 (internal quotes and footnotes omitted). Moreover, there is no constitutional requirement under the second prong of *Lopez* that the "person[ ] or thing[ ] in interstate commerce" travels with intent or is moved with intent to commit a crime. *See Ditomasso,* 552 F.Supp.2d at 247 (citing cases upholding federal gun offenses with no intent element).

Defendant further argues that SORNA is not designed to regulate the interstate movement of sex offenders at all because they may travel freely as long as they remain registered in their home states. Def.'s Mot. 7. However, there is no requirement under the Commerce Clause that Congress regulate all of a certain class of person's interstate travel when enacting a statute. Indeed, there is no constitutional requirement that Defendant's interstate travel even be contemporaneous with the crime. *See Scarborough v. United States,* 431 U.S. 563, 577–78, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977) (upholding statute criminalizing a felon's gun possession under the Commerce Clause when the firearm had at some time previously traveled in interstate commerce). It is enough under the Constitution that Defendant be a "person ... in interstate commerce" for Congress to have authority to regulate his behavior. *See Lopez,* 514 U.S. at 558, 115 S.Ct. 1624.

In the instant case, there is a direct connection between interstate commerce and Defendant's failure to register or update a registration. The Government alleges that Defendant crossed state lines to work in New Mexico while continuing to live in Texas, and he failed to register these changes. Gov't's Resp. 4; Compl. 2–3. Therefore, Defendant's act of moving in interstate commerce is not some attenuated circumstance but actually formed part of the alleged crime. Accordingly, Defendant's Indictment under SORNA is valid.

**b. SORNA's Individual Registration Component—42 U.S.C. § 16913**

In addition to his attack on the enforcement provision of SORNA, Defendant further argues that SORNA's individual registration requirements under 42 U.S.C. § 16913 violate the Commerce Clause, because the latter provision requires sex offenders to register regardless of whether they cross state lines. *See* Def.'s Mot. 7 (citing *United States v. Waybright,* 561 F.Supp.2d 1154, 1162–62 (D.Mont.2008)). Once again, this argument does not apply to the instant facts, as

3414012, at *11 ("To date, over 75 federal courts have addressed the constitutionality of SORNA, and a majority of these cases have addressed Congress's authority to enact the statute under the Commerce Clause. All but two ... have found SORNA to be constitutionally enacted.") The Court will address the only two cases yet published to have found SORNA unconstitutional under the Commerce Clause later in its analysis.

Defendant is alleged to have violated SORNA by crossing state lines and failing to register his changes of employment. *See* Gov't's Resp. 4–7; Compl. 2–3. Moreover, the Court need not decide whether § 16913 violates the Commerce Clause, as the Court holds that the provision is a valid use of authority under the Necessary and Proper Clause. *See* U.S. Const. art. I, § 8, cl. 18. In *Thomas,* the United States District Court for the Northern District of Iowa stated:

> The court concludes that § 16913 is an appropriate and reasonably adapted means by Congress to attain the legitimate end of § 2250, i.e., monitoring sex offenders who cross state lines. To be certain, § 16913's blanket-registration requirement is not narrowly tailored or absolutely necessary to attain such end. For example, Congress could have taken a less drastic step and only required sex offenders who have certain qualifying life events (e.g., a change in employment, school or residence) and actually travel in interstate commerce to register immediately after such travel takes place. Instead, § 16913 is over-inclusive and reaches those sex offenders who change jobs, schools or residences but never travel across state lines. Even so, the court concludes that § 16913 represents a reasonable, good-faith effort on the part of Congress to monitor sex offenders who cross state lines. It must be remembered that we live in a very mobile society. *See, e.g., Kiowa Tribe of Okla. v. Mfg. Techs., Inc.,* 523 U.S. 751, 758, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998). There can be no doubt that sex offenders, like other Americans, frequently change jobs, schools or residences. *See id.* Congress may have determined that it was unworkable, as a practical matter, to devise and enforce a sex-offender registration system that could monitor only those sex offenders who traveled in interstate commerce. Recognizing the federalism concerns that the Supreme Court expressed in *Lopez* and *Morrison,* however, Congress limited federal criminal enforcement of § 16913 to instances in which the sex offender crosses state lines. *See* 18 U.S.C. § 2250(a); *see, e.g., United States v. Pitts,* No. 07–157–A, 2007 WL 3353423, *4 (M.D.La. Nov. 7, 2007) (upholding SORNA against constitutional challenge in part because of Congressional restraint in formulating § 2250(a)). Congress must be afforded the opportunity to use its "discretion . . ., with respect to the means by which [its] powers . . . are to be carried into execution . . . in the manner most beneficial to the people." *McCulloch v. Maryland,* 17 U.S. [316] (4 Wheat.) 316, 4 L.Ed. 579 [ (1819) ]. Therefore, the court concludes that Congress had the authority to enact § 16913 and make it applicable to § 2250. U.S. Const. art. I, § 8, cl. 18.

*Id.* at 921–22; *see also Gonzales,* 545 U.S. at 35, 125 S.Ct. 2195 ("Where necessary to make a regulation of interstate commerce effective, Congress may regulate even those intrastate activities that do not themselves substantially affect interstate commerce.") (Scalia, J., concurring).

The Court has found only one case holding Congress was without the authority to pass § 16913 under the Necessary and Proper Clause. *See Waybright,* at 1162–63. In *Waybright,* the court disagrees with the analysis in *Thomas* and its application of *Gonzales,* holding that the statute in *Gonzales* is distinguishable from SORNA because it essentially regulated an economic activity (personal marijuana use), while SORNA's regulation is essentially non-economic. *See Waybright,* at 1166. However, the analysis of whether an activity is essentially economic in nature is reserved for the third prong of the *Lopez* framework. *See Lopez,* 514 U.S. at 561,

115 S.Ct. 1624. The Court today holds SORNA is valid under the second prong of the *Lopez* framework. Accordingly, inasmuch as the Court has found that the registration requirements of § 16913 are a necessary and proper means for carrying out SORNA's regulation of the persons and things engaged in interstate commerce, the economic nature of Defendant's travel is irrelevant. *See id.* at 560, 115 S.Ct. 1624. *See also Hoke v. United States,* 227 U.S. 308, 321, 33 S.Ct. 281, 57 L.Ed. 523 (1913) (stating that "Commerce among the states ... consists of intercourse and traffic between their citizens, and includes the transportation of persons and property. There may be, therefore, a movement of persons as well as of property; that is, a person may move or be moved in interstate commerce").

The Court today also disagrees with the court in *Waybright* when that court concludes § 16913 is "not a means to an end, it is the end of SORNA." *Waybright,* at 1166. As stated above, the purpose of SORNA is "to protect the public from sex offenders and offenders against children," by "establish[ing] a comprehensive national system for the registration of those offenders[.]" 42 U.S.C. § 16901. This national system of sex offenders is more than the merely sum of its parts, and can only achieve its ends if sex offenders who cross state lines are required to register in every state to which they move to reside, work, or seek an education. Accordingly, Congress's goal is only fully achieved through its application of the Commerce Clause powers. SORNA is not just an "attempt[ ] to utilize the necessary and proper power to enact an overarching statutory scheme based on the existence of Commerce Clause authority to enact a small part of that scheme." *Cf. Waybright,* at 1166. Contrarily, SORNA requires state registration as a necessary and proper part of a comprehensive national scheme to prevent sex offenders from traveling in interstate commerce to avoid detection and move amongst the individual programs. *See Thomas,* 534 F.Supp.2d at 919 ("Congress has deemed sex offenders inherently dangerous, a threat to public safety in themselves and deserving of extensive monitoring through SORNA's registration requirements.") (citing Adam Walsh Act § 102); *Ditomasso,* 552 F.Supp.2d at 246 ("SORNA ... prevents offenders from being lost in the cracks *between* state regulations, a matter which is beyond the power of any one state to comprehensively address.") (emphasis added); *United States v. Akers,* No. 3:07–CR–00086(01)RM, 2008 WL 914493, at *3 (N.D.Ind. April 3, 2008) ("SORNA focuses on sex offenders who travel between states and does not purport to reach offenders who remain within a single state, thus providing the jurisdictional basis and interstate nexus essential to bring SORNA within Congressional authority."); *United States v. Dixon,* No. 3:07–CR–72(01)RM, 2007 WL 4553720 at *5 (N.D.Ind. Dec. 18, 2007) ("SORNA is substantially related to the public's protection from sex offenders whose interstate travel may frustrate any one State's ability to monitor.").

Accordingly, the Court holds that the provisions of SORNA are a valid enactment of Congress's authority under the Commerce Clause and Necessary and Proper Clause of the Constitution. *See* U.S. Const. art. I, § 8, cls. 3, 18.

### 2. SORNA does not violate principles of due process

Defendant next argues that SORNA violates his right to due process. Def.'s Mot. 12–18. The Due Process Clause of the Constitution states that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. Defendant argues that (1) SORNA provides no mechanism to

challenge the registration or designation process, or have a hearing; (2) SORNA has not been implemented by any state, including Texas; and (3) Defendant did not receive any notice of SORNA or its requirements. *Id.*

**a. SORNA's lack of pre-registration hearing**

Defendant argues first that SORNA violates his due process rights because SORNA does not provide for a hearing to assess Defendant's risk of recidivism or current dangerousness before imposing sex offender status, public notification on the Internet, and tier-level risk classifications.[7] Def.'s Mot. 13. Defendant acknowledges that the Supreme Court has dismissed similar arguments when holding that a sex offender does not have a due-process right to challenge his inclusion in a sex offender registry by a pre-inclusion hearing when inclusion in the registry is based wholly on his conviction and not whether he is currently dangerous. *See Conn. Dep't of Pub. Safety v. Doe,* 538 U.S. 1, 7, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003).

Nevertheless, Defendant argues the lack of a hearing violates his right to procedural due process in the instant case because there is no procedural method for him to challenge the validity of the prior conviction before he is required to have his name published on the registries. Def.'s Mot. 13. This, in turn, could lead to a "substantive" due-process violation if Defendant is compelled to comply with registration even if he had not actually been convicted of an offense that Congress has listed as a qualifying "sex offense" in SORNA. *Id.*

Because Defendant's prior conviction falls squarely within the category of persons required by Congress to register under SORNA, the statute is constitutional as applied to him. *Cf. Hinen,* 487 F.Supp.2d at 754–55. Therefore, Defendant lacks standing to challenge the constitutionality of the statute on these grounds "since he can allege no injury traceable to these alleged constitutional deficiencies." *Id.* (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Moreover, Defendant already had an opportunity to contest the validity of his underlying conviction in the criminal proceedings that led to the conviction. Accordingly, Defendant's inclusion in the registry "turn[s] on ... a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest." *Doe,* 538 U.S. at 7, 123 S.Ct. 1160.

Despite his lack of standing, Defendant points out that the Fifth Circuit has held that a Texas statute violated an individual's due process rights when the individual was required to register as a sex offender without a hearing. Def.'s Mot. 13 (citing *Coleman v. Dretke,* 395 F.3d 216, 223–24 (5th Cir.2005)). However, *Coleman* is inapposite to the instant facts in this respect because the Fifth Circuit in *Coleman* held specifically that "prisoners *who have not been convicted of a sex offense* have a liberty interest created by the Due Process Clause in freedom from sex offender classification and conditions." *Coleman,* 395 F.3d at 223 (emphasis added). Similarly, other circuits that have found a deprivation of a liberty interest have expressly predicated their rulings on the fact that the defendant had not been convicted of a sex offense. *See Kirby v. Siegelman,* 195 F.3d 1285, 1292 (11th Cir.1999) ("An inmate *who has never been convicted of a sex crime* is entitled to due process before the state declares him to be a sex offend-

7. As Defendant points out, SORNA does provide for hearings in situations wholly unrelated to the instant case.

er.") (emphasis added); *Neal v. Shimoda,* 131 F.3d 818, 831 (9th Cir.1997) ("An inmate who has been convicted of a sex crime in a prior adversarial setting, whether as the result of a bench trial, jury trial, or plea agreement, has received the minimum protections required by due process."); *Chambers v. Colo. Dep't of Corrections,* 205 F.3d 1237, 1243 (10th Cir.2000) (Being labeled a sex offender "is the label replete with inchoate stigmatization—here based on bare allegations which are vigorously denied *and which have never been tested*—which requires some procedural scrutiny.") (emphasis added). Accordingly, the Court holds that the failure to provide Defendant with a hearing before requiring him to register under SORNA after he has been convicted of a sexual offense is not a deprivation of his right to procedural due process.

Furthermore, the Court holds that failure to hold a hearing for a convicted sex offender to challenge the prior conviction before requiring him or her to register under SORNA does not violate the sex offender's "substantive" right to due process. The right to "substantive" due-process is "protection from arbitrary government action," and "only the most egregious official conduct" is arbitrary in the constitutional sense. *Coleman,* 395 F.3d at 224 (citing *Sacramento v. Lewis,* 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). In *Coleman,* the Court held that sex offender treatment did not violate the defendant's "substantive" due process rights even when the treatment included psychotherapy that "was mandated, confrontational, structured, victim centered, focused on behaviors, *and confidentiality is not maintained.*" [8] *Id.* (emphasis added). While the Fifth Circuit held that such treatment was certainly intrusive, they did not find that the measures "shocked the conscience," nor did they see them to be "conduct intended to injure in some way unjustifiable by any government interest." *Id.* at 224–25. Similarly, the requirement that convicted sexual offenders be required to register and update their registrations with SORNA registries without being provided an additional hearing fails to "shock the conscience" of this Court. Nor, given the Government's valid interest in protecting children from sex offenders, is registry without a hearing unjustified. Accordingly, Defendant's "substantive" due process argument with regard to a lack of hearing also fails. *Cf. Doe v. Moore,* 410 F.3d 1337, 1345 (11th Cir.2005) ("The circuit courts that have considered this substantive due process argument regarding sex offender registries have upheld registration and publication requirements finding no constitutional infirmities."); *Doe v. Tandeske,* 361 F.3d 594, 597 (9th Cir.2004) (per curiam) ("Persons who have been convicted of serious sex offenses do not have a fundamental right to be free from ... registration and notification requirements...."); *Gunderson v. Hvass,* 339 F.3d 639, 643 (8th Cir. 2003) (registration did not infringe the right to a presumption of innocence); *Paul P. v. Verniero,* 170 F.3d 396, 404 (3d Cir. 1999) ("the state interest served by Megan's Law ... would suffice to justify the deprivation even if a fundamental right of the registrant's were implicated.") (citation and internal quotation omitted).

**b. Texas's failure to implement SORNA**

Defendant next argues that because Texas has not implemented the state com-

8. Treatment could also include "interventions with psychopharmacological agents, polygraph exams to determine sexual history, and use of penile plethysmographs to modify deviant sexual arousal and enhance appropriate sexual arousal." *Id.* (internal quotes omitted).

ponent of SORNA, it is impossible for him to comply with the individual component of SORNA that requires him to register in Texas. Def.'s Mot. 14–16. Defendant is once again mistaken.

As stated above, the individual component of SORNA requires a sex offender to "register, and keep registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is student." 42 U.S.C. 16913(a). Every state in the nation and the District of Columbia has a Megan's Law, pursuant to the Wetterling Act. In other words, every state has a system for registration of sex offenders, including Texas and New Mexico. Defendant has allegedly been able to comply with his obligations under SORNA for all periods relevant to this case, and did so initially register upon release for his prior conviction. *See* Gov't's Resp. 3; Compl. 2–3. The fact that Texas has failed to fully implement the state component of SORNA does not obviate Defendant's obligation to register as required by the individual component. *Cf. Adkins,* 2007 WL 4335457, at *6 ("The fact that states have not yet met their obligations under SORNA (they have at least until July 27, 2009, to do so) is of no consequence in determining whether it was possible for Defendant to meet his own obligations under the Act."). Indeed, as stated in *Ditomasso:*

> To the extent there is any ambiguity in the language of the statute, however, both the structure and purpose of the law show that Congress intended for sex offenders to register in their states regardless of whether a state has fully implemented SORNA.... The purpose of SORNA is to prevent sex offenders from falling through the cracks between each state's registration system as they move between states. *See* 42 U.S.C. § 16901.... SORNA is structured to achieve this goal by requiring sex offenders to register in a state, not some free-floating federal bureaucracy. *See* 42 U.S.C. § 16913.

*Ditomasso,* 552 F.Supp.2d at 238–39; *see also United States v. Gould,* 526 F.Supp.2d 538, 542 (D.Md.2007) ("An offender's registration under SORNA does not hinge on implementation in his state."); *Pitts,* 2007 WL 3353423, at *8 ("Compliance does not require the offender to register in a jurisdiction that has enacted legislation complying with the requirements of [SORNA]."); *Beasley,* 2007 WL 3489999, at *3 n. 4 ("Registration under SORNA means registration under a state's sex offender registration rules.").

Accordingly the Court holds that Defendant's due process rights were not violated because he was required to register, despite Texas's failure to implement SORNA.[9]

**c. Defendant's actual notice of SORNA's requirements**

Defendant next argues that because he was never told that he had to register under SORNA, he had no actual notice of his need to register. Def.'s Mot. 17. Defendant further argues that even if Texas's registration forms provide notice that he had to register, such state notice cannot substitute for notice under SORNA. *Id.* Defendant's arguments are again without merit.

9. Defendant's argument that SORNA was not intended to apply until after the Attorney General had issued particular guidelines and regulations pursuant to § 16917(b) is similarly without merit. Section 16917(b) does not determine Defendant's individual responsibilities, as he does not fall within the class of persons to which this provision applies. *See* § 16917(b) ("Notification of sex offenders who cannot comply with subsection (a) of this section").

As stated above, the Government alleges that in 2004 and again in 2007 (this latter occasion being after both the passage of SORNA and the implementation of the Attorney General's interim rule), Defendant signed a CR-32 Pre-Release Notification Form Texas Sex Offender Registration Program. *See* Gov't's Resp. 3-4; Compl. 2-3. On these forms, Defendant acknowledged his lifetime responsibility to maintain and update the Texas sex offender registry as well as to include any relevant changes in his name, physical health and job status. *Id.* Moreover, from 2005 through 2008, Defendant updated his status with the Texas sex offender registry with multiple changes on his employment. *Id.* at 4-5. Finally, when he was arrested, the Government alleges that Defendant admitted that he knew of his registration requirements and failed to comply with them. *Id.* at 6. Accordingly, any argument that Defendant was unaware of his responsibility to maintain and update his registration is contradicted by his own signature and actions.

Moreover, Defendant's argument that he is entitled to specific notice of his responsibilities under SORNA—as opposed to the Texas sex offender registry laws—is erroneous. "If failure to have specific knowledge of the particular statute you have been accused of violating were a pre-requisite to conviction, there would rarely, if ever, be a conviction. Due process does not require specific notice." *United States v. Samuels,* 543 F.Supp.2d 669, 673-74 (E.D.Ky.2008). Indeed, "centuries of Anglo-American jurisprudence" hold that ignorance of the law is no excuse. *See Howell,* 2008 WL 313200, at *9 (N.D.Iowa Feb. 1, 2008) (citing *United States v. Roberts,* No. 6:07-CR-70031, 2007 WL 2155750, at *2 (W.D.Va. July 27, 2007)). As the court in *Roberts* stated:

> "Few offenders have ever had relevant sections of the U.S.Code read to them before committing their crimes, yet they are expected to comply with it even so. Owners of firearms, doctors who prescribe narcotics, and purchasers of dyed diesel are all expected [to] keep themselves abreast of changes in the law which affect them, especially because such people are on notice that their activities are subject to regulation.... Sex offenders are no different; they must comply with the law even when it changes suddenly and without notice, and they are well advised to periodically check for changes because they are particularly subject to regulation."

*Id.* at *9 (quoting *Roberts,* 2007 WL 2155750, at *2); *see also Adkins,* 2007 WL 4335457, at *6; *May,* 535 F.3d 912, 921, 2008 WL 2917766, at *7 (rejecting a similar "ignorance of the law" argument).[10]

Nevertheless, as Defendant correctly points out, there is an exception to the general "ignorance of the law is no excuse" maxim. *See Lambert v. California,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1958); *see also May,* 535 F.3d 912, 920, 2008 WL 2917766, at *7. In *Lambert,* the Supreme Court held a felon registration ordinance in Los Angeles was unconstitutional when the defendant had no knowledge of his duty to register. *Lambert,* 355 U.S. at 229, 78 S.Ct. 240. However, as the 8th Circuit points out in *May,* the *Lambert* exception applies only if "(1) the defendant's conduct was wholly passive, (2) the defendant is not per se blameworthy, and (3) there was an absence of circumstances

10. Defendant's reliance on *United States v. Barnes,* No. 07cr187, 2007 WL 2119895, at *1 (S.D.N.Y. July 23, 2007) and *United States v. Smith,* 528 F.Supp.2d 615, 616 (S.D.W.Va. 2007) is misplaced, as both cases involve instances—counterfactual to the instant case—of failure to register before or on the date of when the Attorney General's Interim Rule came into effect. *See Barnes,* 2007 WL 2119895, at *6; *Smith,* at 618-20.

alerting the defendant to the consequences of the deed." *May,* 535 F.3d 912, 921, 2008 WL 2917766, at *7.

A review of the alleged facts of the instant case demonstrate a *Lambert* exception is not warranted here. While an argument may be made that Defendant's prohibited conduct was wholly passive, his knowledge and repeated fulfillment of his state sex-offender registration requirements before and after the passage of SORNA demonstrate that Defendant was alerted to at least some of the consequences of his failure to update his registration. *See May,* 535 F.3d 912, 920, 2008 WL 2917766, at *7. Indeed, Defendant's failure to update his registration after his circumstances changed was per se blameworthy, because he knew full well that his actions at least violated Texas law. Given Defendant's own alleged admission that he knew he was required to register his status changes, the Court finds no *Lambert* exception here.

In conclusion, the Court agrees with the courts above and almost every other United States District Court addressing this issue in holding that "actual notice of the federal requirement was not necessary for purpose of the Due Process Clause and that knowledge of state reporting requirements sufficed." *United States v. Oakley,* No. 8:-7CR437, 2008 WL 2986256, at *5 (D.Neb. July 31, 2008); *see also United States v. Holt,* No. 3:07–CR–0630–JAJ, 2008 WL 1776495, at *2 (S.D.Iowa April 14, 2008); *Akers,* 2008 WL 914493, at *6–7; *United States v. Utesch,* No. 2:07–CR–105, 2008 WL 656066, at *9 (E.D.Tenn. March 6, 2008); *United States v. Manning,* No. 06–20055, 2007 WL 624037, at *2 (W.D.Ark. Feb. 23, 2007).

**3. Defendant's Indictment does not violate the Ex Post Facto Clause**

Defendant next argues that SORNA violates the Ex Post Facto Clause of the Constitution because it is punitive in nature and increases Defendant's punishment beyond what his initial conviction carried. Def.'s Mot. 18. Moreover, if this Court holds that SORNA is civil and nonpunitive, Defendant argues that the statutory scheme is "so punitive in purpose or effect as to negate [Congress's] intention to deem it civil." *Id.* at 19 (citing *Smith v. Doe,* 538 U.S. 84, 92, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003)). Defendant is once again in error.

The Ex Post Facto Clause of the Constitution states that "No Bill of Attainder or ex post facto Law shall be passed." U.S. Const. Art. I, § 9, cl. 3. The term "ex post facto," is a "term of art with an established meaning at the time of the framing of the Constitution." *Collins v. Youngblood,* 497 U.S. 37, 41, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990) (citation omitted). The Clause prohibits Congress from passing a law that "[1] punishes as a crime an act previously committed, which was innocent when done; [2] which makes more burdensome the punishment for a crime, after its commission, or [3] which deprives one charged with crime of any defense available according to the law at the time when the act was committed." *Id.* at 42, 110 S.Ct. 2715 (citation and emphasis omitted). However, if a statute is civil in nature, and if Congress's intent in passing the statute was not further punishment for a previously committed crime, a statute requiring retroactive application may be upheld unless the statutory scheme is "so punitive either in purpose or effect as to negate the State's intention to deem it civil." *Smith,* 538 U.S. at 92, 123 S.Ct. 1140.

Once again, Defendant acknowledges that there is a Supreme Court ruling addressing whether a sex offender registry violates the constitutional provision at issue. *See Id.* (holding that Alaska's sex

offender registry does not violate the Ex Post Facto Clause because it is civil in nature, non-punitive, and the effects of the law do not negate the civil regulatory scheme); Def.'s Mot. 19–21. Nevertheless, Defendant argues SORNA is distinguishable from the statute upheld in *Smith,* because SORNA expands the penalties for failing to register beyond previous statutes, and because Congress evinced its punitive intent by placing the enforcement provision in Title 18 (the criminal part) of the United States Code. Def.'s Mot. 20.

After comparing SORNA with the statute in *Smith,* the Court finds nothing in SORNA that is in any significant way more "punitive" than the Alaska statute. *Compare Smith,* 538 U.S. at 89, 123 S.Ct. 1140 *with* 42 U.S.C. § 16901 *et seq.; see also United States v. LeTourneau,* 534 F.Supp.2d 718, 720–21 (S.D.Tex.2008) ("Relying on *Smith v. Doe,* all courts reviewing SORNA have held that SORNA does not generally violate the *ex post facto* clause") (emphasis in original); *id.* at 721 n. 1 (collecting cases); *United States v. Carr,* No. 1:07–CR–73, 2007 WL 3256600, at *2 (N.D.Ind. Nov. 2, 2007) (finding both the statute in *Smith* and SORNA are civil and non-punitive in nature); *Hinen,* 487 F.Supp.2d at 755 ("The contours of the statutory scheme at issue in *Smith* are nearly indistinguishable from the one at issue [in SORNA]"). Congress's stated purpose for SORNA—to "protect the public from sex offenders and offenders against children"—does not alone evince a punitive intent. *See* 42 U.S.C. § 16901(a). Moreover, the Supreme Court has held that "only the clearest proof will suffice" to turn a civil remedy into a criminal penalty. *Smith,* 538 U.S. at 92, 123 S.Ct. 1140. In the absence of such proof, the Court declines to turn SORNA's stated civil regulatory scheme into a punitive criminal scheme.

Finally, the fact that the enforcement provision in SORNA is a criminal penalty does not distinguish SORNA from the Alaska sex offender regulatory scheme. A sex offender in Alaska who knowingly fails to comply with the Alaskan system is also subject to criminal prosecution. *See Smith,* 538 U.S. at 90, 123 S.Ct. 1140 (citing Alaska Stat. §§ 11.56.835, 11.56.840 (2000)). Indeed, the entire SORNA regulatory scheme other than its enforcement provision is found in Title 42 of the United States Code, "yet another indication that Congress believed it was creating a civil, nonpunitive regime for the purposes of public safety." *Hinen,* 487 F.Supp.2d at 756 (citing *Smith,* 538 U.S. at 94–95, 123 S.Ct. 1140).

The Court further notes that the only cases it found holding that SORNA violates the Ex Post Facto Clause so hold when the defendant traveled in interstate commerce either before the effective date of SORNA or during the "gap" between the effective date of SORNA and the interim Attorney General Rule applying SORNA retroactively, pursuant to § 16913(d). *See, e.g., United States v. Natividad–Garcia,* No. MO:08–CR–00025(1)–RAJ, 2008 WL 2353357, at *3 (W.D.Tex. June 4, 2008) (holding SORNA violated the Ex Post Facto clause because defendant traveled in interstate commerce in the gap after SORNA was enacted but before the Attorney General issued his interim rule applying SORNA retroactively); *Howell,* 2008 WL 313200, at *11 (same); *United States v. Mantia,* No. 07–60041, 2007 WL 4730120, at *3–5 (W.D.La. Dec. 10, 2007) (same); *United States v. Muzio,* No.4:07CR179 CDP, 2007 WL 2159462, at *6–7 (E.D.Mo. July 26, 2007) (same); *but see United States v. Cardenas,* No. 07–80108–CR, 2008 WL 896206, at *1 (rejecting argument that Ex Post Facto Clause shielded defendant from prosecution who traveled in "gap period" because he was required to

register as soon as SORNA came into effect); *Elliott,* 2007 WL 4365599, at *4–5; *Beasley,* 2007 WL 3489999, at *5.

In the instant case, Defendant was already a convicted sex offender before July 26, 2007, the date SORNA was enacted, and he had already initially registered with Texas. See Gov.'t's Resp. 3. He was therefore required by the language of SORNA itself—not any decision by the Attorney General—to maintain his registration since that day. *See* § 16913(a). Indeed the language of § 16913(d) and the Attorney General's interim applies only to those who were unable to apply when SORNA was enacted, a class of people that clearly does not include Defendant because he was already a registered sex offender on that date. *See Id.* ("Initial registration of sex offenders unable to comply with [general registration]"); *cf. May,* 535 F.3d 912, 919, 2008 WL 2917766, at *6 ("If a defendant ... is not subject to the Attorney General's regulation under § 16913(d) ..., then neither the promulgation of the regulation nor § 16913 would present an ex post facto clause problem in such a case."); *LeTourneau,* 534 F.Supp.2d at 721–22; *Beasley* 2007 WL 3489999, at *5 ("As the Act was signed into law on July 27, 2006, a plain reading of § 16913(a) leads to the conclusion that any sex offender who did not so register after July 27, 2006, was not in compliance with the Act's registration requirements. Nothing in § 16913(d), the delegation to the Attorney General, changes that result.").

Moreover, the Indictment and the alleged facts in the instant case claim that Defendant failed to fulfill SORNA's registration provisions after both SORNA was implemented and the Attorney General's Interim Rule became final.[11] Accordingly, the "gap" argument does not apply in the instant case.

Because Defendant was required to register since the day of SORNA's enactment (already being a registered and convicted sex offender), and because he allegedly violated SORNA after the Attorney Interim Rule became final, the Court holds that Defendant's Indictment under SORNA does not violate the Ex Post Facto Clause of the Constitution.

#### 4. SORNA does not violate the Separation of Powers doctrine

Defendant next argues that Congress impermissibly delegated to the Attorney General the decision as to whether SORNA should be applied retroactively. See 42 U.S.C. § 16913(d); Def.'s Mot. 21. Section 16913(d) allows the Attorney General to specify the applicability of SORNA to sex offenders convicted before its implementation on July 27, 2006 and prescribes rules for such offenders who are unable to register initially. *See* § 16913(d). As stated above, the specific language of this section does not include Defendant, who was a sex offender who had already registered as a sex offender under Texas law on the date of SORNA's enactment. *See* Gov't's Resp. 3; Compl. 2–3. Therefore, Defendant lacks standing to challenge § 16913(d)'s constitutionality. *See May,* 535 F.3d 912, 921, 2008 WL 2917766, at *7 ("Because [the defendant] was not a person unable to register before SORNA's enactment and § 16913(d)'s authorizing the Attorney General to promulgate rules regarding its applicability does not even

11. The Attorney General's Interim Rule became final April 30, 2007. 2 Fed.Reg. 8894, 8897 (Feb. 28, 2007) (codified at 28 C.F.R. § 72 (2007)). Defendant's alleged SORNA violations include his failure to update his employment status in July 2007 for his employment at Wal-Mart, and again in March 2008, after beginning employment at Fort Bliss. Gov't's Resp. 4; Compl. 2–3.

apply to him, [the defendant] lacks standing to raise this challenge.") (citation omitted); *Elliott*, 2007 WL 4365599, at *7.

In addition, the Court notes that proving a non-delegation violation is an uphill battle, one which Defendant did not adequately take on in his Motion. In the past 80 years, the Supreme Court has found only two instances where Congress impermissibly delegated legislative powers to another branch. *See Panama Refining Co. v. Ryan*, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935); *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935). Moreover, the Court has held that "[s]o long as Congress shall lay down an intelligible principle to which the person or body authorized to exercise the delegated authority is to conform, such legislative action is not a forbidden delegation of legislative power." *United States v. Mistretta*, 488 U.S. 361, 372, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (citations and internal brackets omitted).

As in all other statutes challenged since 1935, the Court holds that Congress provided intelligible principle by which to guide the executive delegation of authority. Specifically, the nature of § 16913(d)—allowing the Attorney General to determine the retroactive nature of SORNA to those unable to initially register—circumscribes the delegation of authority to a limited class of people, in furtherance of SORNA goals of protecting children under a comprehensive national registry system. *See* § 16901. Accordingly, SORNA does not violate the non-delegation principle which allows for separation of powers in the federal government. *Cf. Akers*, 2008 WL 914493, at *4; *Howell*, 2008 WL 313200, at *7 (collecting cases); *Utesch*, 2008 WL 656066, at *10; *LeTourneau*, 534 F.Supp.2d at 724–25; *Gould*, 526 F.Supp.2d at 545–46 (collecting cases); *Cardenas*, 2007 WL 4245913, at *7–10; *Hinen*, 487 F.Supp.2d at 751–53.[12]

### 5. SORNA does not violate the Administrative Procedures Act

Defendant next argues that the Attorney General's Regulation, 28 C.F.R. § 72.3, which purportedly applies SORNA retroactively, violated the Administrative Procedures Act ("APA"), codified at 5 U.S.C. § 553, because it was promulgated without a thirty-day notice and comment period. Def.'s Mot. 22–24.

The Administrative Procedure Act requires that "[g]eneral notice of proposed rulemaking shall be published in the Federal Register" "not less than 30 days before [the] effective date [of a substantive rule]" that allows "interested persons an opportunity to participate in the rule making[.]" 5 U.S.C. § 553(b)-(d). An exception to the 30-day rule exists "when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." *Id.* § 553(b)(B).

The "good cause" exception to the notice and comment period of the APA should be "narrowly construed and only reluctantly countenanced." *Utility Solid Waste Activities Group v. EPA*, 236 F.3d 749, 754 (D.C.Cir.2001) (citation omitted). The exception should not be used as an "escape clause;" rather "its use should be

12. The Court did find two cases that held SORNA may represent a non-delegation violation. *See United States v. Aldrich*, No. 8:07CR158, 2008 WL 427483, at *6 n. 5 (D.Neb. Feb. 14, 2008); *United States v. Kapp*, 487 F.Supp.2d 536, 543 n. 10 (M.D.Pa.2007). However, in both instances, the courts provided little analysis and merely expressed their concern over non-delegation principles and ultimately made their conclusions on independent grounds. *Aldrich*, 2008 WL 427483, at *6 n. 5; *Kapp*, 487 F.Supp.2d at 543 n. 10.

limited to emergency situations." *Id.* (citation omitted). "Failure to allow notice and comment, when required, is grounds for invalidating the rule." *Nat'l Org. of Veterans' Advocates v. Sec'y of Veterans Affairs,* 260 F.3d 1365, 1375 (Fed.Cir.2001) (citation omitted).

As part of the proposed Interim Rule, the Attorney General included the following language:

> The immediate effectiveness of this rule is necessary to eliminate any possible uncertainty about the applicability of the Act's requirements—and related means of enforcement, including criminal liability under 18 U.S.C. § 2250 for sex offenders who knowingly fail to register as required—to sex offenders whose predicate convictions predate the enactment of SORNA. Delay in the implementation of this rule would impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders who fail to register through prosecution and the imposition of criminal sanctions. The resulting practical dangers include the commission of additional sexual assaults and child sexual abuse or exploitation offenses by sex offenders that could have been prevented had local authorities and the community been aware of their presence, in addition to greater difficulty in apprehending perpetrators who have not been registered and tracked as provided by SORNA. This would thwart the legislative objective of "protect[ing] the public from sex offenders and offenders against children" by establishing "a comprehensive national system for the registration of those offenders," SORNA § 102, because a substantial class of sex offenders could evade the Act's registration requirements and enforcement mechanisms during the pendency of a proposed rule and delay in the effectiveness of a final rule.

Applicability of the Sex Offender Registration and Notification Act, 72 Fed.Reg. 8894, 8896–97 (Feb. 28, 2007).

While the Court does not find public comment on the Attorney General's Interim Rule "unnecessary," the Court does find that the reasons the Attorney General stated for foregoing a 30–day notice and comment period demonstrate that delay in promulgating the rule would be both impracticable and against the public interest. First, according to the Attorney General's Manual, a thirty-day public notice and comment period is "impracticable" under the APA when "an agency finds that due and timely execution of its functions would be impeded by the notice otherwise required in [§ 553][.]" *Utility Solid Waste Activities Group,* 236 F.3d at 754 (citing UNITED STATES DEPARTMENT OF JUSTICE, ATTORNEY GENERAL'S MANUAL ON THE ADMINISTRATIVE PROCEDURE ACT ("ATTORNEY GENERAL'S MANUAL") 30–31 (1947)). An example of such an "impracticable" situation is "when a safety investigation shows that a new safety rule must be put in place." *Id.* In the instant case, the Attorney General states that a 30–day notice period would "impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders who fail to register through prosecution and the imposition of criminal sanctions" 72 Fed.Reg. at 8896. Given the safety risks of allowing sex offenders to continue unregistered, even for a short period of time, the Court agrees that notice before implementation would be impracticable.

Moreover, the Attorney General also sufficiently demonstrates that delaying implementation would have been against the public interest. Allowing for good cause in the public interest "connotes a situation in which the interest of the public would be defeated by any requirement of advance

notice[.]" *Utility Solid Waste Activities Group,* 236 F.3d at 754 (quoting Attorney General's Manual at 31). As discussed above and as made explicit in 42 U.S.C. § 16901, sexual predators have been deemed by Congress to be a clear danger to society. Allowing for a 30-day notice and comment period would potentially lead to "commission of additional sexual assaults and child sexual abuse or exploitation offenses by sex offenders that could have been prevented had local authorities and the community been aware of their presence, in addition to greater difficulty in apprehending perpetrators who have not been registered and tracked as provided by SORNA." 72 Fed.Reg. at 8896–97. Such a situation would defeat the purpose of SORNA, which is to protect children against additional sex crimes. *See* § 16901. Accordingly, further delay would have been against the public interest.

The Court therefore holds that the Attorney General showed "good cause" in promulgating the Interim Rule without the initial thirty-day notice.[13] In doing so, the Court is in accord with all other United States District Courts who have so far ruled on the issue. *See United States v. Senogles,* No. 08–117 (DWF/RLE), 570 F.Supp.2d 1134, 1152, 2008 WL 2971447, at *12 (D.Minn. Aug. 4, 2008); *United States v. David,* No. 1:08cr11, 2008 WL 2045827, at * 7–8 (W.D.N.C. April 18, 2008); *Utesch,* 2008 WL 656066, at *10–11; *United States v. Dixon,* No. 07–CR–72(01) RM, 2007 WL 4553720, at *6 (N.D.Ind. Dec. 18, 2007); *Gould,* 526 F.Supp.2d at 546; *Pitts,* 2007 WL 3353423, at *8.

### 6. SORNA does not violate the Tenth Amendment

Defendant next argues that SORNA violates the Tenth Amendment because its requirement that sex offenders register in individual state-created and state-run sex offense registries is an unconstitutional encroachment of federal power on state sovereignty. Def.'s Mot. 24–26. Defendant is once again in error.

The Supreme Court has held that a private citizen, acting on his own behalf and not in an official capacity or on behalf of the state citizenry, lacks standing to raise a Tenth Amendment claim. *See Tenn. Elec. Power Co. v. Tenn. Val. Auth.,* 306 U.S. 118, 145, 59 S.Ct. 366, 83 L.Ed. 543 (1939). Assuming standing, however, Defendant's argument nonetheless fails. The Tenth Amendment states that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved by the States respectively, or to the people." U.S. Const. amend X. The Supreme Court has interpreted this Amendment to mean, in part, that "Congress cannot compel States to enact or enforce a federal regulatory program." *Printz v. United States,* 521 U.S. 898, 935, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997) (citing *New York v. United States,* 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992)). Indeed, "[t]he Federal Government may neither issue directives requiring the States to address particular problems, nor command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program." *Id.* The Supreme Court ruled that "such commands are fundamentally incompatible with our constitutional system of dual sovereignty." *Id.*

Unfortunately for Defendant, the regulatory scheme enacted by Congress does not command state officers or their political subdivisions to do anything. As

13. The Court also notes that the Department of Justice subsequently issued proposed guidelines that were open to the formal public notice and comment review period. *See Gould,* 526 F.Supp.2d at 546.

noted by more than a dozen courts throughout the country in language similar to the following:

> SORNA does not require a state to change its law or procedures to comply with the federal sex offender registration program. Rather, a state can choose to implement SORNA or, in the alternative, choose not to implement SORNA and receive a reduction in federal funding. Pursuant to Congress' constitutionally authorized spending power, (U.S. Const.Art.I, § 8, cl. 1), Congress "may attach conditions on the receipt of federal funds ... 'to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives.'" *South Dakota v. Dole,* 483 U.S. 203, 206, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987) (quoting *Fullilove v. Klutznick,* 448 U.S. 448, 474, 100 S.Ct. 2758, 65 L.Ed.2d 902 (1980)). The Tenth Amendment is not violated when the federal government encourages states to enact SORNA's provisions as a condition to receipt of federal funding.

*United States v. Zuniga,* No. 4:07CR3156, 2008 WL 2184118, at *19–20 (D.Neb. May 23, 2008) (additionally citing *United States v. Hacker,* No.8:07CR243, 2008 WL 312689, at *2 (D.Neb. Feb. 1, 2008); *Gould,* 526 F.Supp.2d at 549; *Cardenas,* 2007 WL 4245913, at *14).

Indeed, the Court notes once again that in addition to the cases cited above, every other federal court addressing this issue and publishing its opinion to date has rejected Defendant's Tenth Amendment argument. *See United States v. Gagnon,* No. 08–cr–52–P–S, 2008 WL 3523181, at *5 (D.Me. Aug. 11, 2008); *Oakley,* 2008 WL 2986256, at *5; *Waybright,* at 1168–69; *United States v. Cochran,* No. CR–08–18–RAW, 2008 WL 2185427, at *2 (E.D.Okla. May 23, 2008); *United States v. Tong,* CR–08–20–RAW, 2008 WL 2186205, at *2 (E.D.Okla. May 23, 2008); *Ditomasso,* 552 F.Supp.2d at 247; *United States v. Craft,* No. 4:07CR3168, 2008 WL 1882904, at *11 (D.Neb. April 23, 2008); *David,* 2008 WL 2045827, at *8–9; *Akers,* 2008 WL 914493, at *4; *Utesch,* 2008 WL 656066, at *14–15; *United States v. Brown,* No. 07Cr485(HB), 2007 WL 4372829, at *4–6 (S.D.N.Y. Dec. 12, 2007); *Pitts,* 2007 WL 3353423, at *8–9.

**7. Defendant's Indictment is sufficiently pled**

Defendant's final argument is that his Indictment is defective. Def.'s Mot. 26–28. Specifically, Defendant argues that the Indictment fails to inform Defendant of what he did to make him guilty of the charge against him, and thus trial on the Indictment would violate his constitutional rights. *Id.* The Court disagrees.

Rule 7 of the Federal Rules of Criminal Procedure states, in part, that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government." Fed.R.Crim.P. 7(c)(1). When reviewing the sufficiency of an indictment, the Court must take the indictment's allegations as true. *United States v. Lucas,* 516 F.3d 316, 342 (5th Cir.2008) (citing *United States v. Ratcliff,* 488 F.3d 639, 643 (5th Cir.2007)). An indictment is sufficient if it "alleges every element of the crime charged and in such a way as to enable the accused to prepare his defense and to allow the accused to invoke the double jeopardy clause in any subsequent proceeding." *Ratcliff,* 488 F.3d at 643 (citing *United States v. Bieganowski,* 313 F.3d 264, 285 (5th Cir.2002)); *see also Lankford,* 196 F.3d at 569.

The Court finds no defect in Defendant's Indictment. Each element of the crime is sufficiently pled and Defendant is apprised of the essential facts nec-

essary to enable him to prepare his defense against the offense charged. "It is not necessary for an indictment to go further and to allege in detail the factual proof that will be relied upon to support the charges." *United States v. Caldwell,* 302 F.3d 399 (5th Cir.2002) (citation omitted). If Defendant seeks to know the evidentiary details upon which the Indictment is predicated, he may move for a Bill of Particulars.

## III. CONCLUSION

Defendant has failed to raise a constitutional defect in SORNA, either facially, or as applied. Moreover, Defendant has failed to demonstrate that SORNA violates the Administrative Procedure Act. Finally, the Court holds that Defendant's Indictment is sufficient. Accordingly, Defendant's Motion (**Doc. No. 33**) is **DENIED.**

**SO ORDERED.**